IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| GERALD KELLER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:10-CV-3282-RWS |
| ROBERT M. STRAUSS, M.D., *et al.*, | : |
| Defendants. | : |
| | : |
| | : |
| | : |

**ORDER**

This case comes before the Court on: Defendants Gastrointestinal Specialists of Georgia PC ("GSI") and Robert M. Strauss, M.D.'s (collectively, "GSI Defendants") Motion to Dismiss Plaintiff's Complaint [21]; Plaintiff's Motion to Appoint Counsel [27]; Plaintiff's Motion to Strike the GSI Defendants' Motion to Dismiss [29]; Plaintiff's Motion for Protective Order [30]; GSI Defendants' Supplemental Motion to Dismiss [32]; GSI Defendants' Motion to Strike Dkt. No. [32] [35]; GSI Defendants' Supplemental Motion to Dismiss [36]; GSI Defendants' Joint Motion for Extension of Time for Early Planning Conference [37]; GSI Defendants' Joint Motion for Protective Order

[38]; Plaintiff's Motion to Strike GSI Defendants' Motion to Dismiss [41]; Defendants Merck & Co., Inc. ("Merck") and Schering Plough Corporation's ("Schering") (collectively, "Schering Defendants") Partial Motion to Dismiss [43]; the Defendant United States of America's ("United States") Motion to Dismiss [62]; Plaintiff's Motion for Leave to File Amended Complaint against the United States [67]; Defendant Copernicus Group IRB Inc.'s ("Copernicus") Motion to Dismiss [68]; and, Plaintiff's Motion to Strike Copernicus' Motion to Dismiss [71]. After a review of the record, the Court enters the following Order.

## I. Brief Factual Background[1]

Plaintiff Gerald Keller, *pro se*, files this action based upon injuries he sustained as a human research subject in a clinical trial to test the safety and efficacy of SCH 503034, a drug intended to treat hepatitis C. Cmpl., Dkt. No. [3] at ¶¶ 11, 20. The study was sponsored by Schering Plough Research Institute, which is a subsidiary of Defendant Schering, and was independently reviewed by Copernicus. Id. at ¶¶ 4-5. Defendant Strauss and his medical practice Defendant GSI served as the Principal Investigator for the study–it was

---

[1] These facts are taken from the Amended Complaint and the Complaint, as incorporated by reference. The Court does not make any findings of fact.

these Defendants who were tasked with monitoring the research subjects' side effects. Id. at ¶¶ 3-4, 27-28.

Prior to participating in the clinical trial, Plaintiff signed three informed consent "contracts" which stated that he consented to the trial but could "refuse to take part or withdraw from [the] study at anytime without penalty or loss of benefits to which [he was] otherwise entitled." Id. at ¶¶ 11-16. As well, these informed consents stated that "[i]n the event [he] suffered bodily injury or an unexpected adverse event as a direct result of the study drug or any clinical procedure properly performed according to the study plan, the study sponsor [would] pay reasonable medical costs (physician fees and medical expenses) needed to treat the injury." Id. at ¶ 18. On May 7, 2007, Plaintiff began the clinical trial. Id. at ¶ 20.

Throughout the trial, Plaintiff experienced many of the "difficult [] and dangerous side effects that could develop from taking the study drugs." Id. at ¶ 29. However, in January 2008, Plaintiff's clinical trial participation ended when he was incarcerated for traffic violations. Id. at ¶ 30; Aff., Dkt. No. [3-14] at ¶ 16.

3

AO 72A
(Rev.8/82)

In October 2008, Plaintiff notified a GSI employee that he suffered side effects caused by the clinical trial and requested follow-up care pursuant to the informed consent agreements. Cmpl., Dkt. No. [3] at ¶ 31. He was then told he did not qualify because he withdrew from the study prior to completing the protocol. Id. at ¶ 32. Plaintiff continued to contact all of the Defendants to request medical care and eventually was told that he needed to release his medical records. Id. at ¶ 35-45. Plaintiff then released them. Id. at ¶ 46. However, those records were never forwarded to Defendant Schering as promised. Id. at ¶¶ 47-50.

Beyond contacting all of the Defendants, Plaintiff also filed a complaint with the Department of Health and Human Services ("HHS") against the Schering Defendants, Copernicus, and the GSI Defendants. Am. Cmpl., Dkt. No. [22] at ¶ 7. However, HHS responded that his trial was governed by the Food and Drug Administration ("FDA") and forwarded his complaint to that agency. Id. at ¶ 8. But, the FDA never investigated the claim. Id. at ¶¶ 10-12.

Following the Defendants' continued refusal to pay for his medical treatment, Plaintiff filed this action against the Schering Defendants, the GSI Defendants, and Copernicus. Cmpl., Dkt. No. [1]. Plaintiff's Complaint seeks

damages from all preceding Defendants for: 1) medical negligence, 2) breach of contract, 3) intentional infliction of emotional distress, 4) breach of fiduciary duty, 5) violation of Racketeer Influenced and Corrupt Organizations ("RICO") Act, 6) violation of binding customary law predicated on the right to human dignity, 7) constructive fraud, and 8) actual fraud.  Cmpl., Dkt. No. [3].  In December 2010, Plaintiff amended his complaint to add common law fraud and mail fraud against the preceding Defendants and a general violation of the Federal Tort Claims Act against the United States for failing to investigate his complaint.  Am. Cmpl., Dkt. No. [22].  All of the Defendants have moved to dismiss, and the parties have also filed various procedural motions which the Court will consider in turn.

## II. Discussion

### A. GSI Defendants' Motion to Strike their First Supplemental Motion to Dismiss

The GSI Defendants move to strike their Supplemental Motion to Dismiss [32] because instead of filing their memorandum of law therewith, the Defendants accidentally filed an unrelated pleading. These Defendants have filed the corrected pleading at docket number [36].  As this motion is unopposed, and the Court does not find any prejudice, Defendants' Motion to

Strike [35] is **GRANTED**. See  LR 7.1B, NDGa (" Failure to file a response shall indicate that there is no opposition to the motion. ").  Docket number [32] is **STRICKEN**.

### B. Plaintiffs' Motion to Strike and Renewed Motion to Strike the GSI Defendants' First Motion to Dismiss [29, 41]

Plaintiff has moved to strike the GSI Defendants' Motion to Dismiss [21] because the GSI Defendants did not mail Plaintiff a copy of this filing pursuant to Federal Rule of Civil Procedure 5.  Dkt. Nos. [29, 41].  The GSI Defendants admit that they did not mail the filing due to an administrative error. Dkt. No. [33] at 1-2.  However, after learning of their omission, the Defendants promptly mailed the Plaintiff a copy and consented to extend Plaintiff's response deadlines. Dkt. No. [33-2] at 1.  As well, Plaintiff has since filed an amended complaint **MOOTING** the at-issue Motion to Dismiss [21].

Plaintiff has not suffered any prejudice and in fact, has responded to all motions to dismiss filed by the GSI Defendants.  Therefore, Plaintiff's Motions to Strike [29, 41] are **DENIED**.

### C. Plaintiff's Motion to Strike Copernicus' Motion to Dismiss [71]

Plaintiff has also moved to strike Defendant Copernicus' Motion to Dismiss as untimely.  Plaintiff argues that since Copernicus filed an answer in

6

this case, it cannot subsequently file a Federal Rule of Civil Procedure 12(b)(6) motion. Rule 12(b) does state that a Rule 12(b)(6) motion must be filed "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). And, Copernicus filed its motion after its answer. Therefore, under Rule 12(b), Copernicus' motion is technically untimely. See FED. R. CIV. P. 12(b).

However, while the motion may be untimely as a motion to dismiss, the defense raised is an appropriate one for a judgment on the pleadings. See FED. R. CIV. P. 12(h)(2)(B); Skrtich v. Thornton, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002) (noting that "a [Rule 12(b)(6) ] motion [to dismiss] *may* be construed as a request for judgment on the pleadings pursuant to [Rule] 12(c)") (emphasis in original); see also Whitehurst v. Wal-Mart Stores East, L.P., 2008 WL 5062325 at *2 (11th Cir. Dec. 2, 2008) (rejecting plaintiff's argument that Rule 12(b)(6) motion was untimely because court could construe it as a Rule 12(c) motion). Therefore, the Court construes Copernicus' motion as a motion for judgment on the pleadings.

While the Court will operate under Rule 12(c), the Rule 12(b)(6) standards apply to this construed 12(c) motion. See Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008)

7

(noting that a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim). Plaintiff's Motion to Strike [71] is therefore **DENIED**.

### D. Plaintiff's Motion for Counsel [27]

Plaintiff also requests this Court to appoint him counsel. "A plaintiff in a civil case has no constitutional right to counsel." Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999). "A court may, however, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff. The district court has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Redmon v. Lake Cnty. Sheriff's Office, 2011 WL 476601, *5 (11th Cir. Feb. 10, 2011) (quotations and citations omitted). Exceptional circumstances exist "where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990).

The Court does not find exceptional circumstances in this case. Plaintiff has been able to articulate his positions, and the Court does not find the legal issues to be incredibly novel or complex. Therefore, Plaintiff's request for counsel [27] is **DENIED**.

8

### E. Plaintiff's Motion to Amend his Amended Complaint [67]

Plaintiff seeks to amend his Amended Complaint for the purpose of bringing medical negligence, fraud, and abuse of process claims against the United States. Plaintiff alleges that a doctor who is employed by a community health center affiliated with HHS committed medical negligence and fraud when he failed to inform the Plaintiff about the risks caused by his clinical-trial-induced side effects and did not correctly write down the Plaintiff's reported symptoms. Proposed 2d Am. Cmpl., Dkt. No. [67-1] at ¶¶ 19-26. As well, Plaintiff alleges that the United States did not appropriately investigate his administrative claim regarding the clinical trial. Id. at ¶¶ 27-30.

Rule 15 directs the Court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Despite that instruction, leave to amend is "by no means automatic." Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979). The trial court has "extensive discretion" in deciding whether to grant leave to amend. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999). A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile." Id. A claim is futile if it cannot withstand a motion to dismiss. Fla. Power &

9

Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter of law").

Here, the Court finds that Plaintiff's amendment would be futile. In order to sue the United States in tort, Plaintiff must follow the requirements of the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. § 2679(a)-(b)(1). The FTCA requires Plaintiff to first exhaust his administrative remedies by presenting his claim to the at-issue federal agency before bringing suit. 28 U.S.C. § 2675(a).

Plaintiff argues that he did present a claim to HHS on January 3, 2010. However, upon reading that document, Plaintiff did not put the United States on notice of any improper action by one of its employees or request a sum certain. Letter, Dkt. No. [66] at 27-28; see Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994) (stating that to recover for injuries caused by a governmental employee, the plaintiff must present an administrative claim which includes a sum certain in damages); 28 C.F.R. § 14.2 (stating that a claim is deemed presented when "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for

10

injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. . . "). Rather, the document only explains the inefficacies of his private medical trial. Dkt. No. [66] at 27-28. Plaintiff has not filed any complaint that puts the United States on notice of any claim regarding one of its employees. Aff. Anagos, Dkt. No. [70-1] at ¶ 4 (stating that no claims have been filed by the Plaintiff under the FTCA).

Because Plaintiff's claims have not been exhausted, this Court does not have subject matter jurisdiction to dispose of them. See Suarez, 22 F.3d at 1065. As well, Plaintiff's fraud claim is not even cognizable under the FTCA. 28 U.S.C. § 2680(h) (noting that unless the offending agent was an investigative or law enforcement officer who is able to "execute searches, to seize evidence, or to make arrests," fraud claims are not proper). And, it is unclear how Plaintiff's abuse of process claim is any different from the claim already asserted against the United States in his Amended Complaint. Compare 2d Am. Cmpl., Dkt. No. [67-1] at ¶¶ 27-30 with Am. Cmpl., Dkt. No. [22] at ¶¶ 3, 7-13. Thus, Plaintiff's intended amendments are futile and his Motion to Amend [67] is **DENIED**.

### F. United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction

The United States also seeks to dismiss all claims against it under

11

Plaintiff's Amended Complaint. In his Amended Complaint, Plaintiff alleges a general claim under the FTCA (without enumerating a specific count) predicated on HHS' failure to investigate his January 3, 2010 complaint. Am. Cmpl., Dkt. No. [22] at ¶¶ 3, 7.  As seen above, this Court has found that the Plaintiff has not exhausted this claim–or any others–as he has never presented the United States with a complaint regarding a government employee's negligence or requested a sum certain.  See supra.  Therefore, this Court lacks subject matter jurisdiction. See Suarez, 22 F.3d at 1065. The United States' Motion to Dismiss [62] is **GRANTED**.  Plaintiff's FTCA claim is **DISMISSED, without prejudice**.

### G. Motions to Dismiss for Failure to State a Claim and Motion for Judgment on the Pleadings

All remaining Defendants have moved to dismiss Plaintiffs' federal claims.  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

12

U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  The court does not need to "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

### 1. Racketeer Influenced and Corrupt Organizations ("RICO") Act and Mail Fraud

Defendants first move to dismiss Plaintiff's RICO and underlying mail fraud counts.  In the civil context, federal mail fraud is only actionable through a private federal RICO action.  Ayres v. General Motors Corp., 234 F.3d 514,

519 n.8 (11th Cir. 2000).  In order to have standing under RICO, the plaintiff must be "injured in his business or property." 18 U.S.C. § 1964(c); <u>Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.</u>, 140 F.3d 898, 906 (11th Cir. 1998) (finding that the phrase "injured in his business of property by reason of a [RICO] violation . . ." creates a standing provision that must be satisfied). The Eleventh Circuit has stated that "the ordinary meaning of the phrase 'injured in his business or property,' excludes personal injuries, including the pecuniary losses therefrom." <u>Grogan v. Platt</u>, 835 F.2d 844, 847 (11th Cir. 1998).

Here, Plaintiff has only alleged personal injuries and related pecuniary losses.  <u>See generally</u> Am. Cmpl., Dkt. No. [22] <u>and</u> Cmpl., Dkt. No. [3] (seeking compensation for physical and mental injuries and related medical expenses).  Therefore, since Plaintiff does not have standing to assert this claim, Plaintiff's RICO and Mail Fraud claims are **DISMISSED** against all Defendants.

### 2. Violation of Binding Customary Law (Count VI)

The Defendants next seek to dismiss Plaintiff's "Right to Human Dignity" claim, which he claims is based upon the Nuremberg Code and the

14

Helsinki Declaration. While the Eleventh Circuit has not addressed this issue, district courts in other circuits have found that these international norms do not create a private right of action.[2] Washington Univ. v. Catalona, 437 F. Supp. 2d 985, 1000-01 (E.D. Mo. 2006); Ammend v. BioPort, Inc., 322 F. Supp. 2d 848, 872-73 (W.D. Mich. 2004); White v. Paulsen, 997 F. Supp. 1380, 1383 (E.D. Wash. 1998); Hoover v. West Va. Dep't of Health and Human Res., 984 F. Supp. 98, 980 (S.D. W. Va. 1997). This Court agrees with those courts' reasoning that it is unnecessary to look to international law when human research standards have been effectively promulgated here in the Code of Federal Register. See Washington Univ., 437 F. Supp. 2d at 1000-01; 21 C.F.R. §§ 50.20 *et seq.*; 45 C.F.R §§ 46.116 *et seq.*. Therefore, Plaintiffs' Right to Human Dignity Claim is **DISMISSED**.

### 3. Violation of the Food, Drug, and Cosmetic Act ("FDCA")

Under his medical negligence count, Plaintiff also asserts a violation of

---

[2]However, the Nuremberg Code and the Helsinki Declaration are actionable when a proper plaintiff brings a claim under the Alien Tort Statute, as that statute specifically instructs the district court to look to the "law of actions" in establishing tort norms. Abdullahi v. Pfizer, Inc., 562 F.3d 163 (2d Cir. 2009); Alien Tort Statute, 28 U.S.C. § 1350 ("the district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.") (emphasis added).

15

21 C.F.R. § 50.20, an informed consent regulation promulgated under the FDCA. See FDCA, 21 U.S.C. §§ 301 *et seq.*. However, neither the FDCA or its regulations support a private right of action. See 21 U.S.C. § 337(a) (stating that enforcement proceeding of the FDCA "shall be by and in the name of the United States"); Ellis v. C.R. Bard, Inc., 311 F.3d 1272, 1284 n.10 (11th Cir. 2002) ("no private right of action exists for a violation of the FDCA"). Therefore, all claims predicated on the FDCA are **DISMISSED**.

### 4. Remaining State Law Claims

Having dismissed all original jurisdiction claims for all Defendants, the Court declines to exercise its jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . .(3) the district court has dismissed all claims over which it has original jurisdiction"). Therefore, Plaintiff's remaining state law claims are **DISMISSED, without prejudice** against all Defendants.

### H. Remaining Motions

As a result of the foregoing, the following motions are **MOOT**: Plaintiff's Motion for Protective Order [30]; GSI Defendants' Joint Motion for

Extension of Time for Early Planning Conference [37]; and, GSI Defendants' Joint Motion for Protective Order [38].

### III. Conclusion

GSI Defendants' Motion to Dismiss Plaintiff's Complaint [21] was rendered **MOOT** by Plaintiff's Amended Complaint. As a result, Plaintiff's Motion to Strike the GSI Defendants' Motion to Dismiss [29] is **DENIED**.

As well, GSI Defendants' Motion to Strike Dkt. No. [32] [35] is **GRANTED**. Therefore, GSI Defendants' Supplemental Motion to Dismiss [32] is **STRICKEN**.

Plaintiff's Motion to Appoint Counsel [27], Plaintiff's Motion to Strike GSI Defendants' Motion to Dismiss [41], Plaintiff's Motion for Leave to File Amended Complaint against USA [67], and Plaintiff's Motion to Strike Copernicus' Motion to Dismiss [71] are all **DENIED**.

However, the United States' Motion to Dismiss [62] is **GRANTED**. Plaintiff's FTCA claim is **DISMISSED, without prejudice**. As well, GSI Defendants' Supplemental Motion to Dismiss [36], the Schering Defendants Partial Motion to Dismiss [43] and Copernicus' Motion to Dismiss [68] are **GRANTED, in part**. The Court **DISMISSES with prejudice** all federal

17

AO 72A
(Rev.8/82)

causes of action, but **DISMISSES without prejudice** all supplemental state law claims.

As a result of the foregoing, the following motions are **MOOT**: Plaintiff's Motion for Protective Order [30]; GSI Defendants' Joint Motion for Extension of Time for Early Planning Conference [37]; and, GSI Defendants' Joint Motion for Protective Order [38].

**SO ORDERED** this __17th__ day of June, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)